T.C. Memo. 2007-188

UNITED STATES TAX COURT

TYSON FOODS, INC. AND SUBSIDIARIES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21590-03.                    Filed July 16, 2007.

<u>Jay H. Zimbler</u>, <u>W. Thomas Baxter</u>, <u>Kevin R. Pryor</u>, and
<u>Hille R. Sheppard</u>, for petitioner.

<u>Bonnie L. Cameron</u>, <u>James F. Kearney</u>, and <u>Catherine T. Gugar</u>,
for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined deficiencies of
$7,352,495, $2,802,710, and $1,793,801 in petitioner's Federal
income taxes for its years ended September 30, 1995, 1996, and
1997, respectively.  Ten separate adjustments were set forth in

the statutory notice, and petitioner raised a new issue in its petition. Seven issues were settled by the parties before trial, and one (the research credit issue) has been deferred for later trial or other disposition. Two issues were settled after trial. The issue addressed in this opinion is whether petitioner may depreciate, upon application of the rule of Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), approximately $2 million in expenditures for which complete and correct records were not maintained. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Petitioner is a Delaware corporation with its principal offices located in Springdale, Arkansas. During the years in issue, petitioner was the world's largest fully integrated producer, processor, and marketer of poultry-based food products.

By the end of 1991, Culinary Foods, Inc. (Culinary), based in Chicago, Illinois, was a well-established manufacturer of frozen food products for institutional buyers, as well as other food products for the airline industry. At that time, Culinary operated through two integrated manufacturing facilities located on the north side of Chicago.

In 1992, a fire destroyed one of Culinary's two manufacturing facilities.  As a temporary measure, Culinary leased two facilities and fitted them out with new machinery.

In 1993, Culinary broke ground for the construction of a 125,000-square-foot, $18 million office and manufacturing facility on the south side of Chicago in a neighborhood that the City of Chicago was attempting to redevelop.  That neighborhood is generally known as the "Back-of-the-[stock]Yards".  In June 1994, the City of Chicago granted Culinary a $5 million tax increment financing (TIF) subsidy in connection with the construction of Culinary's new facility and, more specifically, with the jobs that it would bring to the Back-of-the-Yards.  The subsidy was to be paid over time.

In August 1994, petitioner purchased the stock of Culinary in a transaction that was treated as an asset purchase for Federal income tax purposes.  At that time, petitioner allocated its purchase price to the various assets acquired from Culinary and claimed depreciation and amortization deductions with respect thereto.  No allocation was made to the TIF subsidy.

Beginning in mid-1995, Culinary moved its operations from its north side-owned and leased facilities into its new Back-of-the-Yards facility.

On July 12, 1999, during the audit of petitioner's Federal income tax returns for its September 30, 1995 through 1999, tax

years, respondent proposed to reallocate, and petitioner agreed to the reallocation of, petitioner's purchase price among the various assets held by Culinary.  As part of this adjustment, the parties agreed to allocate $5 million of the purchase price to the receivable from the City of Chicago for the TIF subsidy.  Based on the allocation of the $5 million of the purchase price to the receivable from the City of Chicago for the TIF subsidy, payments on the receivable should have been debited to cash and credited to the receivable with no impact on petitioner's taxable income.

In fact, however, in accounting for payments that the City of Chicago made in connection with the subsidy, petitioner did not credit a receivable.  Rather, the payments were received and credited as shown in the following chart:

| Ref. | Check No. | Date | Amount | Account No. | Account Description |
|------|-----------|------|--------|-------------|---------------------|
| A | 96737341 | 1-27-95 | $875,453.00 | 101565 | Land-Contra ($625,000) |
|   |          |         |             | 101900 | Goodwill ($250,453) |
| B | 96767315 | 3-10-95 | 1,955,451.00 | 101226 | TIF moving expenses |
| C | 96878721 | 7-5-95 | 52,189.43 | 101226 | TIF moving expenses |
| D | 96960850 | 11-24-95 | 422,704.97 | 101226 | TIF moving expenses |
| E | 97039857 | 4-15-96 | 330,780.50 | 780946 | Misc. other income |
| F | 97039858 | 4-15-96 | 1,363,421.10 | 780946 | Misc. other income |
| Total |       |        | $5,000,000.00 |        |                   |

Various entries in the accounts shown above erroneously increased or decreased petitioner's taxable income for the years in issue.

The parties have agreed to the proper treatment of all of the above accounts except with respect to entries into account No. 101226, TIF moving expenses.  That account had a zero balance

at the end of the fiscal years 1995 and 1996.  The only records explaining the amounts that were debited to the moving expense account are lists showing a breakdown by vendor or other brief description, but not identifying the nature of the item or the dates that the credited amounts were expended.

Respondent has conceded that petitioner's income should be reduced by $1,800,354 of the misapplied $5 million subsidy. Petitioner contends that it is entitled to deduct an additional $2,007,640.  Petitioner concedes that it is not entitled to reduce its income by the balance of $1,192,006.

OPINION

In its opening brief on this issue, petitioner's position is concisely stated as follows:

> Petitioner's records are insufficient to determine the extent to which these expenses should have resulted in a reduction of otherwise allowable ordinary and necessary business expenses as contrasted with the reduction of otherwise allowable depreciation. However, at a minimum, under the well-established Cohan rule (Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930)), petitioner is entitled to treat the entire $2,007,640 as a capital expenditure depreciable over a five-year time period and to reduce its taxable income accordingly for the resulting additional depreciation deductions.

Respondent replies:

> * * * [Petitioner's] assertion that * * * [it] is at least entitled to capitalize the remaining amounts in dispute without any documentation, is to simply ignore the well known legal principle that deductions are a matter of legislative grace, and the taxpayer must clearly demonstrate entitlement to any deductions

claimed, even capital deductions. <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992).

 Petitioner cavalierly relies on <u>Cohan v. Commissioner</u>, 39 F.2d 540 (2d Cir. 1930) to assert that the remaining expenses are deductible and thus this Court should allow a greater deduction than the $1,800,354 already permitted by respondent. Petitioner bases this belief on the fact that because account 101226, of which petitioner alleges the remaining $2,324,193 was credited, is labeled "TIF Moving Expenses," and because the TIF Subsidy was given in connection with Culinary, then all of the $2,324,193 [now reduced to $2,007,640] in dispute must represent moving expenses of food processing equipment for which petitioner is entitled to capitalize [the cost] over a five year time period. Petitioner has no evidence to substantiate this allegation.

Respondent's primary criticism of petitioner's evidence is that the list of expenditures on which petitioner relies is for the entire calendar year 1995 and cannot be allocated to the fiscal years before the Court. Respondent points out that the list of vendors contains no information regarding the nature of the expense or when within the calendar year 1995 the expense was incurred. Respondent concludes that "petitioner wants this Court to make a leap of faith without any corroborating evidence that the remaining amounts in issue were for the purchase, the installation, or the moving of equipment for use in Culinary's processing facility." Respondent emphasizes petitioner's status in the industry and its employment of in-house and outside accountants and tax preparers "who were well aware of the record keeping requirements of the Internal Revenue Code."

Section 6001 requires taxpayers to "keep such records, render such statements, make such returns, and comply with such rules and regulations as the Secretary may from time to time prescribe." Section 1.6001-1(a), Income Tax Regs., requires the taxpayer to "keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax or information."

If a claimed deduction is disallowed by respondent, petitioner must prove entitlement to that deduction, whether ordinary and necessary business expenses or depreciation expense. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934) ("a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms"); Rule 142(a); Cluck v. Commissioner, 105 T.C. 324, 337 (1995). (While the burden of proof may be shifted in some cases involving taxpayers, including corporations, unlike petitioner, with a limited net worth, under section 7491, the burden shift occurs only where "the taxpayer has maintained all records required". Sec. 7491(a)(2)(B).)

The doctrine of Cohan v. Commissioner, supra, permits the Court to estimate allowable deductions when it is clear that

deductible expenses have been incurred.  However, there must be sufficient evidence in the record to provide a basis for making an estimate.  Mendes v. Commissioner, 121 T.C. 308 (2003); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).  This is not a case where no allowance has been made for the costs of relocating the Culinary facility, and a substantial amount has been conceded by respondent.  Approximations under the Cohan rule necessarily bear heavily upon taxpayers whose inexactitude in failing to keep records created the problem.  See Cohan v. Commissioner, 39 F.2d at 544.  Here there is evidence that certain payments were made and recorded.  From that, petitioner asks us to conclude that the payments must have been either for deductible expenses or depreciable assets and that the expenditures that were made are attributable to a tax year before the Court.

The only evidence that petitioner produced in this regard was the list of vendors and amounts that were recorded in the moving expenses account and the testimony of David L. Van Bebber (Van Bebber), a lawyer involved in the Culinary acquisition who had reviewed the document and concluded that "This lists out certain third party vendors that I believe Culinary was utilizing or making payments to for goods or services."  Van Bebber was familiar with some, but not all, of the vendors on the list.  As to one, for example, he testified that "It could be line

equipment. It could be freezing equipment. It could be any number of the different types of equipment that we utilize in the food processing business." Although he identified the nature of the business of certain of the vendors, the most he could say was:

> Q [Petitioner's counsel] Do you have any views as to the nature of the invoices?

> A Yes. I believe these invoices were for either the purchase, the installation, the moving of equipment for the processing facility, the new processing facility on Ashland Avenue.

No invoices were in the record or ever produced. On cross-examination, Van Bebber admitted that he was not involved in the accounting with respect to the TIF subsidy or the disputed expenditures.

Petitioner repeatedly refers to the list of vendors as a "contemporaneous record". But the list is, in effect, contemporaneous only with respect to the recording of amounts that went into account No. 101226. It is not contemporaneous in the sense that invoices, purchase orders, or journal entry explanations reflect the nature of the items purchased. The witness's speculation, based on familiarity with certain of the vendors, is not reliable evidence that the items paid for are deductible currently or over time through depreciation. On a record in which it is established that erroneous accounting entries were made, we have no confidence that the expenditures

were for the purpose claimed by petitioner.  Thus, we conclude that petitioner has failed to satisfy its burden of proving that it is entitled to the disputed deductions.

Because of the yet unresolved research credit issue,

<u>An appropriate order</u>

<u>will be issued.</u>